ELECTRONICALLY FILED
2021 Jul 07 PM 4:27
CLERK OF THE SCOTT COUNTY DISTRICT COURT
CASE NUMBER:  2021-CV-000011

## IN THE TWENTY FIFTH JUDICIAL DISTRICT
## DISTRICT COURT, SCOTT COUNTY, KANSAS
## CIVIL DEPARTMENT

| | | |
|---|---|---|
| TYRONE L. RUMFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| HIGH CHOICE FEEDERS, LLC, | ) | |
| HIGH CHOICE CATTLE, LLC, | ) | |
| HIGH CHOICE GRAIN, LLC, | ) | |
| BRADLEY J. SCOTT, and | ) | |
| K. JOHN HINTZSCHE, | ) | |
| | ) | |
| Defendants. | ) | |

Pursuant to K.S.A. Chapter 60

## **PETITION**

Plaintiff Tyrone L. Rumford, through undersigned counsel, brings this action against the Defendants, High Choice Feeders, LLC, High Choice Cattle, LLC, High Choice Grain, LLC, Bradley J. Scott, and K. John Hintzsche, for damages.  Plaintiff alleges for his cause of action against Defendants:

1. Plaintiff Tyrone L. Rumford is a citizen of the state of Kansas.

2. Defendant Bradley J. Scott is a citizen of the state of Illinois.

3. Defendant K. John Hintzsche is a citizen of the state of Illinois.

4. Defendant High Choice Feeders, LLC is a Kansas limited liability company, established in 2006, with its principal place of business at 553 West Road 40, Scott City, Kansas 67871.

**EXHIBIT A**

5.     Defendant High Choice Cattle, LLC, is a Kansas limited liability company, established in 2006, with its principal place of business at 553 West Road 40, Scott City, Kansas 67871.

6.     Defendant High Choice Grain, LLC, is a Kansas limited liability company, established in 2011, with its principal place of business at 553 West Road 40, Scott City, Kansas 67871.

7.     Collectively, Defendants High Choice Feeders, LLC, High Choice Cattle, LLC, and High Choice Grain, LLC, are referred to as the Company.

8.     At all times relevant to the allegations in this Petition, Defendants Scott and Hintzsche have been members of Defendant High Choice Feeders, LLC, High Choice Cattle, LLC, and High Choice Grain, LLC, with operational control over the Company.

9.     Since 2006, the Company has owned and operated two feedyards in Scott County, Kansas.

10.    The Company hired Rumford in 2006 to serve as the General Manager of the Company.

11.    A true and accurate copy of Rumford's employment agreement with the Company is attached as Exhibit A.

12.    In addition to providing salary & benefits, the employment agreement provides for a profit-sharing bonus.  The employment agreement states:

> *8% bonus: The General Manager will have the opportunity to share in the Profit Before Taxes (PBT) of High Choice Feeders, LLC, High Choice Cattle, LLC combined at 8%.  The bonus structure will activate at $400,000 PBT with an open top end. Once the bonus is activated, it is retro back to the first dollar. Example = $700,000 PBT x 8% = $56,000 Bonus*

13.     Beginning in 2011 when Defendant High Choice Grain, LLC was established, the PBT bonus was calculated by reference to all three entities that comprise the Company.

14.     The Company's fiscal year runs from August 1st to July 31st of the following year.

15.     Throughout his employment with Defendant, Rumford regularly worked thirteen or more hours per day and he routinely worked six or seven days per week.

16.     Throughout his employment with the Company, Rumford performed his job well, generating millions of dollars in profit for the Company.

17.     On June 23, 2019, Rumford emailed Defendants Scott and Hintzsche, requesting an increase in his profit-sharing bonus from 8% to 10%, effective for the fiscal year beginning August 1, 2019.

18.     The document attached as Exhibit B is a true and accurate copy of the email that Rumford sent on June 23, 2019.

19.     The Company agreed to this modification and, accordingly, paid Rumford a 10% profit-sharing bonus for the fiscal year August 1, 2019 to July 31, 2020.

20.     On June 8, 2021 at approximately 9:30 AM,  Defendants Scott and Hintzsche arrived at Rumford's office at High Choice Feeders #1, located in Scott County.

21.     Defendants Scott and Hintzsche were reluctant to shake Rumford's hand.

22.     Defendants Hintzsche said to Rumford, "Today is not a good day."  Rumford responded by asking, "What do you mean?" Defendant Hintzsche stated, "As of right now you are terminated as an employee and your services are no longer needed."

23.     Defendant Hintzsche stated that he and Defendant Scott had put together a very generous severance package.

24.    Hintzsche placed an envelope on Rumford's desk with the proposed severance agreement.

25.    Defendant Hintzsche told Rumford to have a lawyer review the severance agreement.

26.    Defendant Hintzsche attributed the termination, in part, to Rumford's 2019 email requesting a raise.

27.    A true and accurate copy of the proposed severance agreement is attached as Exhibit C.

28.    In the severance agreement, the Company offered to pay Rumford $1,002,570.00 in exchange for a full release, non-disparagement, and a three-year agreement regarding non-solicitation and non-competition.

29.    The amount of the consideration in the severance agreement – $1,002,570.00 – is the amount of Rumford's 10% profit-sharing bonus calculated on PBT from August 1, 2020 through April 30, 2021.

30.    Stated another way, Defendants Scott, Hintzsche, and the Company tried to use part of Rumford's earned and accumulated 10% profit-sharing bonus as consideration for the terms and conditions contained within the proposed severance agreement.

31.    The Company owns and operates the website, www.highchoicefeeders.com.

32.    Defendants Scott and Hintzsche control what is on the Company's website.

33.    Though Defendant fired Plaintiff on June 8, 2021, it continues to use Rumford's name and likeness to market the Company's services.

34.    Defendants have no license from Rumford to use his name or likeness for commercial purposes.

35.     Kansas has a "strong and longtime Kansas public policy of protecting wages and wage earners." *Campbell v. Husky Hogs, L.L.C.*, 292 Kan. 225, 234, 255 P.3d 1, 7 (2011) *citing Coma Corporation v. Kansas Dept. of Labor*, 283 Kan. 625, 644, 154 P.3d 1080 (2007).

36.     This public policy is reflected in the Kansas Wage Payment Act, K.S.A. 44-313, et seq. ("KWPA").

37.     Under the KWPA, "wages" is defined as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis less authorized withholding and deductions." K.S.A. 44-313(c).

38.     The Kansas Administrative Regulations expand on this definition: "'Or other basis,' within the meaning of K.S.A. 44-313(c), shall include all agreed compensation for services for which the conditions required for entitlement, eligibility, accrual or earning have been met by the employee. Such compensation may include, but is not limited to, **profit sharing,** fringe benefits, or compensation due as a result of services performed under an **employment contract** that has a wage rate required or implied by state or federal law." K.A.R. 49-20-1(d) (emphasis added).

39.     Under the KWPA, "Every employer shall pay **all wages due** to the employees of the employer at least once during each calendar month, on regular paydays designated in advance by the employer." K.S.A. 44-314(a) (emphasis added).

40.     Under the KWPA, "Whenever an employer discharges an employee or whenever an employee quits or resigns, the employer shall pay the employee's earned wages not later than the next regular payday upon which he or she would have been paid if still employed as provided under K.S.A. 44-314 either through the regular pay channels or by mail

postmarked within the deadlines herein specified if requested by the employee." K.S.A. 44-3159(a).

41.     Rumford's KWPA rights cannot be contravened, set aside, or waived unless there has been a court action or a binding settlement agreement approved by the Kansas Department of Labor. *See* K.S.A. 44-324.

42.     Defendants Scott, Hintzsche, and the Company attempted to condition Rumford's receipt of his earned profit-sharing bonus on Rumford's agreement to forgo working in the feedyard business for three years.

43.     The Company willfully violated the KWPA by failing and refusing to pay Rumford his profit-sharing bonus in a timely manner.

44.     K.S.A. 44-324(b) provides: "Any officer, manager, major shareholder or other person who has charge of the affairs of an employer, and who knowingly permits the employer to engage in violations of K.S.A. 44-314 or 44-315, and amendments thereto, may be deemed the employer for purposes of [the KWPA]."

45.     Defendants Scott and Hintzsche are therefore personally liable for the Company's willful violations of the KWPA.

46.     Defendants Scott, Hintzsche, and the Company are liable to Rumford under the theory of misappropriation of plaintiff's likeness.

47.     The unlawful conduct of Defendants Scott, Hintzsche, and the Company caused, and continue to cause, harm to Rumford.

WHEREFORE, Plaintiff Tyrone L. Rumford prays that judgment be entered in his favor and against Defendants High Choice Feeders, LLC, High Choice Cattle, LLC, High Choice Grain, LLC, Bradley J. Scott, and K. John Hintzsche, for damages in excess of

$75,000.00, representing unpaid wages, penalties, general damages, special damages, disgorgement of ill-gotten profits, prejudgment interest, and such other relief as the Court deems appropriate.

**Plaintiff demands trial by jury on all issues.**

DATE: July 7, 2021.

SUBMITTED BY:

GRAYBILL & HAZLEWOOD, LLC

/s/ Sean McGivern
Sean M. McGivern, #22932
Nathan R. Elliott, #24657
218 N. Mosley
Wichita, KS 67202
Telephone: (316) 266-4058
Facsimile: (316) 462-5566
sean@graybillhazlewood.com
nathan@graybillhazlewood.com
ATTORNEYS FOR PLAINTIFF

ELECTRONICALLY FILED
2021 Jul 07 PM 4:27
CLERK OF THE SCOTT COUNTY DISTRICT COURT
CASE NUMBER:  2021-CV-000011

## IN THE TWENTY FIFTH JUDICIAL DISTRICT
## DISTRICT COURT, SCOTT COUNTY, KANSAS
## CIVIL DEPARTMENT

| | |
|---|---|
| TYRONE RUMFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| HIGH CHOICE FEEDERS, LLC, | ) |
| HIGH CHOICE CATTLE, LLC, | ) |
| BRADLEY J. SCOTT, and | ) |
| K. JOHN HINTZSCHE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Pursuant to K.S.A. Chapter 60

## EXHIBIT A

# High Choice Feeders, LLC

**45W619 Wheeler Road**
**Sugar Grove, IL 60554**

**Office 630-556-3455**

## Employment Offer

Date: November _____, 2006

To: Ty Rumford

Position: General Manager - High Choice Feeders, LLC
High Choice Cattle, LLC

- This offer is contingent upon the employee managing High Choice Feeders, LLC (feed yards # 1 & # 2) High Choice Cattle, LLC and the farming operations of High Choice Feeders, LLC.

- This agreement will start on the closing date of High Choice Feeders, LLC purchase of Crist Feed yard, Inc.

- The General Manager will report directly to the President of High Choice Feeders, LLC.

- High Choice Feeders President and The General Manager will develop mutually in writing the duties and responsibilities of the General Manager position.

- The General Manager will be actively involved and participate in developing the short and long range plans for the businesses.

- The Members of High Choice Feeders, LLC will set (mutually agreed upon) Annual targets and goals for the businesses.

- The General Manager will submit an Annual Budget with associated Sales, Operating and Capital spending budgets to achieve the targets and goals by August of each year. (Approved and accepted by the President)

- The General Manager will have full responsibility of all employees and daily operations of the businesses.

- High Choice Feeders, LLC desires to have Ty Rumford participate in an Equity position of the businesses from 1% up to and not exceeding 10%. This would equate to an estimated range of $50,000 to $500,000 respectfully. High Choice Feeders will give Ty Rumford a 3 year option to buy in at this level from the

Attachment #2

Page 1 of 2

purchase date of the Crist Feed Yard. Ty Rumford must be employed by High Choice Feeders as the General Manager to exercise this option.

- Compensation: High Choice Feeders will compensate The General Manager for services rendered a base salary of $200,000 annually ($16,666.67 monthly). This compensation will be reviewed annually during the anniversary month between employee and President.

- 8% Bonus: The General Manager will have the opportunity to share in the Profit before Taxes (PBT) of High Choice Feeders, LLC, High Choice Cattle, LLC combined at 8 %. The bonus structure will activate at $400,000 PBT with an open top end. Once the bonus is activated, it is retro back to the first dollar.
    Example = $700,000 PBT X 8% = $56,000 Bonus

- Benefits: High Choice Feeders will supply Health Insurance, vehicle for business and the opportunity for participation in tax deferred retirement programs (401-K) to the General Manager.

- Additional policies and procedures will be established as needed to help guide the businesses and give direction to the General Manager.

High Choice Feeders, LLC
High Choice Cattle, LLC

President,    Bradley J Scott _____ Date _11-30-06_

High Choice Feeders, LLC
High Choice Cattle, LLC

General Manager,    Ty Rumford _____ Date _12/15/06_

ELECTRONICALLY FILED
2021 Jul 07 PM 4:27
CLERK OF THE SCOTT COUNTY DISTRICT COURT
CASE NUMBER:  2021-CV-000011

**IN THE TWENTY FIFTH JUDICIAL DISTRICT
DISTRICT COURT, SCOTT COUNTY, KANSAS
CIVIL DEPARTMENT**

| | | |
|---|---|---|
| TYRONE RUMFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| HIGH CHOICE FEEDERS, LLC, | ) | |
| HIGH CHOICE CATTLE, LLC, | ) | |
| BRADLEY J. SCOTT, and | ) | |
| K. JOHN HINTZSCHE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pursuant to K.S.A. Chapter 60

**EXHIBIT B**

## Ty Rumford

| | |
|---|---|
| **From:** | Ty Rumford <hcf3@wbsnet.org> |
| **Sent:** | Sunday, June 23, 2019 7:58 AM |
| **To:** | 'Bradley Scott'; 'John Hintzsche' |
| **Subject:** | Compensation |

Bradley and John,

In December of 2006 I entered into an employment agreement with High Choice Feeders LLC. Among other benefits in the agreement compensation for the General Manager was set at $200,000.00 annually with a profit before tax bonus of 8% activating at $400,000.00. Since signing this agreement twelve and a half years ago no mention has been made by ownership of any additional compensation while enjoying profits unimagined in the midst of much diversity.

Disappointing to say the least, I have continued to perform and make the High Choice Companies profitable. I think an annual salary increase to $300,000.00 with a profit before tax bonus of 10% effective August 1, 2019 can be easily justified. This is a 3% increase per year which is the national average.

Ty Rumford

Attachment #3
1 Pg

ELECTRONICALLY FILED
2021 Jul 07 PM 4:27
CLERK OF THE SCOTT COUNTY DISTRICT COURT
CASE NUMBER:  2021-CV-000011

## IN THE TWENTY FIFTH JUDICIAL DISTRICT
## DISTRICT COURT, SCOTT COUNTY, KANSAS
## CIVIL DEPARTMENT

| | |
|---|---|
| TYRONE RUMFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| HIGH CHOICE FEEDERS, LLC, | ) |
| HIGH CHOICE CATTLE, LLC, | ) |
| BRADLEY J. SCOTT, and | ) |
| K. JOHN HINTZSCHE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Pursuant to K.S.A. Chapter 60

## EXHIBIT C



## SEVERANCE AGREEMENT AND GENERAL RELEASE

This Confidential Severance Agreement and General Release ("Agreement") is entered into between High Choice Entities (which includes High Choice Feeders, LLC; High Choice Cattle, LLC; High Choice Grain, LLC; their subsidiaries and affiliates and any predecessors and/or successors thereto) (collectively "Company") and Ty Rumford ("Employee," referred to collectively with Company as "Parties"). In exchange for the mutual covenants and undertakings expressed herein, the sufficiency and receipt of which is hereby acknowledged, the Parties agree as follows:

## RECITALS

WHEREAS, on or around December 15, 2006, the Employee began working for Company as General Manager;

WHEREAS, Company has decided to terminate the employment relationship between Employee and Company effective June 8, 2021 (the "Termination Date");

WHEREAS, the Parties wish to resolve any and all disputes between them;

WHEREAS, this Agreement provides Employee with a contractual right to certain benefits and relief that Employee would not otherwise be entitled to receive; and

WHEREFORE, for good and valuable consideration, the adequacy of which is acknowledged, the Parties contract and agree to the following terms:

## TERMS AND CONDITIONS

1. **SEVERANCE PAYMENT.** In exchange for Employee's promises herein and release of Company and others as set forth in Paragraph 3:

a. Company has paid Employee all salary, benefits, accrued paid time off, and reimbursements due and owing through the Termination Date. No additional salary, bonuses, benefits, or other compensation is payable, except those specifically provided for herein. All payments under this Agreement will be made as regular wage payments, using customary payroll practices and payroll withholdings, and a federal form W-2 will be issued to Employee.

b. Company will classify Employee's termination as a "resignation" and will agree to pay Employee the total gross sum of One Million Two Thousand Five Hundred and Seventy Dollars and 00/100 ($1,002,570.00) ("Settlement Amount"), less appropriate withholdings. The Settlement Amount shall be paid in equal installments over a period of the next three years, which correlates to payments that will be made on or before September 30, 2021; on or before September 30, 2022; and on or before September 30, 2023. Employee will be responsible for any taxes due on such amount. Employee agrees that he is responsible for all taxes, if any, that may be due on the amount paid to him under this Agreement and, if any taxing authority seeks to recover any amount from Company as a result of such payment, Employee agrees to indemnify and hold Company harmless from any federal, state or local tax, interest, addition to tax and/or penalty, if any, as a result of the payment hereunder.

c. Company will transfer ownership of the Prudential Life Insurance policy, policy number L9704984, to Employee. Employee will be responsible for all premiums, payments, taxes, and any other amounts due on the policy as of the Termination Date. If Prudential Life Insurance, or any other agency, seeks to recover any amounts due from Company, Employee agrees to indemnify and hold Company harmless for any payments or penalties incurred on the policy.

d. Company will continue to pay for Employee's health insurance through the end of the month in which the Termination Date occurs.

2. **COMPENSATION ACKNOWLEDGMENT.** Employee acknowledges that he has received any and all salary and other pay and compensation of any sort due from Company, that he is not entitled to any future salary or other payments from Company that is not expressly stated in this Agreement, and further acknowledges that, but for this Agreement, he would not otherwise be entitled to the amounts referred to in Paragraph 1.

3. **RELEASE. In exchange for the payment to Employee described in Paragraph 1, EMPLOYEE, DOES HEREBY FOREVER RELEASE AND WAIVE** any and all claims, counts, causes of action and demands of every kind and nature existing as of the date of this

2

Agreement, whether or not now known, whether liquidated or un-liquidated and whether accrued or hereafter accruing, which Employee has or under any circumstances could have against Company. Employee's release shall apply to Company, Company's predecessors, successors, assigns, parents, subsidiaries, joint ventures, or affiliated entities, including but not limited to shareholders, directors, officers, managers, partners, employees, insurers, attorneys and/or agents of any of the foregoing, or against any benefit plans, and the administrators, trustees, fiduciaries, or administrative committees thereof, or any person associated with any of the foregoing (hereinafter referred to as "the Released Parties"). This release further includes, without limitation, any and all claims and causes of action of any kind or nature for all claims of money, wages, loss, injury, costs, attorneys' fees, medical expenses, damages, expenses of any other nature or anything else, whether such claims are known or unknown, that Employee has or may have against any of the entities or individuals referred to in this Paragraph, and further specifically includes, but is not limited to, the following:

    a.  Any claims related to Employee's employment with the Released Parties including, but not limited to, violations of the Kansas Act Against Discrimination; the Age Discrimination in Employment Act, as amended; the Uniformed Services Employment and Reemployment Rights Act; the Equal Pay Act, 29 U.S.C. §206(a) and interpretive regulations; workers' compensation anti-retaliation laws; 42 U.S.C. §§ 1981 et seq.; the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq.; the Health Insurance Portability and Accountability Act; the Employee Retirement and Income Security Act of 1974, as amended; 29, U.S.C. §§ 1001 et seq.; claims for breach of contract, express or implied; the National Labor Relations Act; the Labor Management Relations Act; the Fair Credit Reporting Act; the Genetic Information Nondiscrimination Act; the Electronic Communication Privacy Act of 1986 (including the Stored Communications Act); the Dodd-Frank Wall Street Reform and Consumer Protection Act; Executive Orders 11246 and 11141; claims for compensation, including but not limited to wages, bonuses, or commissions; claims for reimbursement of any kind; claims arising in tort, including, but not limited to, intentional or negligent infliction of emotional distress, defamation and/or invasion of privacy; the Fair Labor Standards Act, 29 U.S.C., §§ 201 et seq.; the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008, 42 U.S.C. §§ 12101 et seq.; the Occupational Safety and Health Act; claims for wrongful discharge; the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (including the Older Workers Benefit Protection Act); the Consolidated Omnibus Budget Reconciliation Act; Title VII

3

of the Civil Rights Act of 1964, as amended; the Sarbanes-Oxley Act, 18 U.S.C. 1514A; any other claims of discrimination or retaliation of any kind; the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 et seq.; claims for breach of the covenant of good faith and fair dealing; claims for benefits or fringe benefits; claims for, or relating to, stock or stock options; the False Claims Act (including the qui tam provisions thereof); and claims for severance or termination pay.

b.   Any and all rights to or claims for compensation (including, but limited to, salary, severance or vacation pay, bonuses, incentives, pension, insurance, or any other employment or fringe benefits or compensation of any kind whatsoever) except as provided for in this Agreement, rights to or claims for liquidated damages, rights to or claims for reinstatement, rights to or claims for contract, compensatory, exemplary or punitive damages, rights to or claims for injunctive relief, rights to or claims for front pay, rights to or claims for expenses, costs, or attorneys' fees.

c.   Any and all other claims that Employee now has or may have, whether known or unknown, for any losses, damages or injuries whether anticipated or unanticipated, or which Employee's heirs, personal representatives, administrators, successors, and assigns hereinafter can, shall, or may have, both known or unknown, against the Released Parties included by not limited to, actual or implied breach of contract, violation of public policy, fraud, negligence, wrongful or retaliatory discharge, defamation, breach of any covenant of good faith and fair dealing, violation of any statutes, administrative rules, regulations or codes, misrepresentations of any kind, intentional infliction of emotional distress, negligent infliction of emotional distress, any other claims sounding in tort, and claims for punitive or consequential damages.

d.   Employee hereby expressly waives the benefit of any statute or rule of law, which, if applied to this Agreement would otherwise exclude from its binding affect any claims not known by Employee to exist. Employee further acknowledges, understands, and agrees that any claims Employee may have against the Released Parties are dropped for all purposes and all times. The Parties agree that to the extent Employee may have a right to file or participate in a claim or charge against Company that is not releasable, this Agreement shall not be intended to release, waive or otherwise extend to such a right, if any.

e.   Notwithstanding the foregoing, nothing in this Agreement shall interfere with Employee's right to file a charge with the Equal Employment Opportunity Commission ("EEOC"), or participate in an EEOC proceeding or to engage in any activity or make any filing or claim that cannot be waived by this Agreement; however, Employee agrees to waive any right to: (i) recover or accept any money damages or personal relief from any such claims, and (ii) to challenge the validity, enforceability, or knowing and voluntary nature, of this release under the Age Discrimination in Employment Act of 1967 ("ADEA").

4. **UNEMPLOYMENT.** Company agrees not to contest any claim for unemployment

benefits Employee may seek.

4

5. **SPECIAL PROVISIONS FOR AGE DISCRIMINATION.** In addition to the provisions contained herein, and by execution of this document, Employee expressly waives any and all rights to claims arising under the Age Discrimination in Employment Act, 29 U. S. C. §§ 626 et seq., as amended and the Older Workers Benefit Protection Act, 29 U.S.C. §§ 621 *et seq*. ("ADEA/OWBPA"), and

  a.   Employee acknowledges that his waiver of rights or claims arising under the ADEA/OWBPA is in writing, written in a manner calculated to be understood, and is understood by him;

  b.   Employee expressly understands that this waiver refers to rights or claims arising under the ADEA/OWBPA;

  c.   Employee expressly understands that, by execution of this document, he does not waive any ADEA/OWBPA rights or claims that may arise after the date this Agreement is executed;

  d.   Employee acknowledges that the waiver of his rights on claims arising under the ADEA/OWBPA is in exchange for the consideration outlined above, which is above and beyond that to which he is otherwise entitled to receive from Company and/or the Released Entities;

  e.   Employee has been advised by Company and the Released Entities that he is given a reasonable period of time (twenty-one days) within which to consider this Agreement and may revoke this Agreement for a period of seven-days after execution by Employee, and this Agreement shall not become enforceable against Employee until this period has expired. Any notice of revocation should be promptly delivered to Company's counsel, Mitchell E. Wood, via email to mwood@halbrookwoodlaw.com;

  f.   Employee has been further advised by Company and the Released Entities that he should consult with an attorney before waiving his rights under this section.

6. **EMPLOYEE COVENANT NOT TO SUE.** Employee further understands that by signing this Agreement, Employee is agreeing to not file any claims or lawsuits against the Released Parties with any court or government agency. If Employee is requested to participate in any lawsuit, other proceeding, or investigation against Released Parties, Employee agrees to immediately let Company know of the request. The Parties agree that to the extent, if any,

Employee may have an unwaivable right to file or participate in a claim or charge against any of the Released Parties, this Agreement shall not be intended to waive such a right. However, even if Employee has a right to file or participate in a claim or charge against any of the Released Parties, Employee agrees that Employee shall not obtain, and hereby waives Employee's right to, any relief of any kind from such a claim or charge.

7. **NO FUTURE EMPLOYMENT.** Employee agrees that he will never again seek employment with or the opportunity to otherwise perform services for or on behalf of Company or with any of the Released Parties. If, through mistake, inadvertence or otherwise, Employee applies for employment with any of the aforementioned entities, then he shall withdraw his application immediately upon notice without any recourse, legal or otherwise, and to the extent that Employee has already been hired, he will resign immediately upon notice without any recourse, legal or otherwise. Employee further agrees that if application is made, Company and/or the Released Parties may decline it legitimately and lawfully solely because Employee breached his promise and not for any other reason.

8. **EMPLOYEE COOPERATION.** Employee agrees to fully cooperate with Company in all matters relating to the winding up of Employee's pending work and the orderly transition of any such pending work, including, but not limited to, the transition of the Company's Registered Agent and update with the Kansas Secretary of State. Employee further agrees to make himself available to provide assistance to Company regarding any issues that may arise related to Company's business. Employee further agrees to cooperate with Company in relation to any future litigation wherein Employee is needed to provide information or testimony related to his employment with Company. However, the Parties agree that nothing in this paragraph shall be

deemed to waive Employee's confidentiality and non-disparagement requirements under this Agreement.

9. **RETURN OF PROPERTY.** To the extent he has not already done so, Employee agrees to immediately return all property and materials of Company, including, but not limited to, client lists; Employee's Company phone; the Truck; any and all keys to any Company Property or Locations; and any confidential information listed in Paragraph 10 below. This also includes any passwords and login information Employee used for Company's email, software, or other online accounts.

10. **CONFIDENTIALITY.** Employee agrees that he shall maintain the terms and existence of this Agreement confidential and shall not disclose information regarding the terms or existence of severance to any person, other than to his spouse, legal counsel, or professional tax advisors for purposes of securing income tax related advice. The Parties agree that, if asked by customers, vendors, the community, or any other person or entity, about Employee's termination, they will respond, "*we have mutually agreed to part ways,*" or words to that effect, without revealing the terms and conditions of this Agreement or making any comment or indication as to his pleasure or displeasure with this agreement. Employee affirms that prior to the execution of this Agreement, he has not disclosed information to any person other than to his spouse, counsel, certified public accountants, or professional tax advisors for securing tax related advice, about the terms of the Agreement, or other information that would enable a person to quantify the payments made. This Confidentiality clause is a material term of this Agreement, and violation of the confidentiality obligation will entitle Company to damages, including injunctive relief and amounts paid pursuant to this Agreement, as well as legal fees incurred in enforcing this obligation.

11. **CONFIDENTIAL INFORMATION.** In the course of his employment with Company, Employee may have had access to confidential and proprietary information and records, data, and other trade secrets of Company ("Confidential Information"). Confidential Information includes, but is not limited to, the following types of information or material, both existing and contemplated, regarding Company (including subsidiaries or affiliated companies): corporate information, including plans, strategies, forecasts, budgets, methods, customer information (including customer lists and prospect lists), supplier information (including supplier lists and prospect lists), agent information (including agent lists and prospect lists), other prospects or market research data, and any and all records, notes, protected health information, and memoranda; financial information, including pricing, cost and performance data, debt arrangement, equity structure, investors and holdings, or any other information of any nature in the possession or control of Company which gives Company an opportunity to obtain an advantage over competitors who do not know of or use it; operational and scientific information, including trade secrets and technical information, processes, methods, techniques, financial information, forecasts, systems, formulas, patents, models, devices, programs, computer software, policies, writings, research, data, ideas, or other proprietary information; and personnel information, including personnel lists, resumes, personnel data, organizational structure, compensation structure and performance evaluations. Employee shall not directly or indirectly disclose, permit to be disclosed, or use for Employee's own benefit or the benefit of any other person or entity any Confidential Information, whatever its form, nor display for any purpose any document or portion thereof or any copy or reproduction thereof. For purposes of this paragraph, Confidential Information does not include any publicly available information or any information, artwork, prints, patents, or other rights that Employee had or owned prior to employment with Company.

8

12. **NON-DISPARAGEMENT.** Employee will not engage in any act that is intended or may reasonably be expected to harm the reputation, business, employment, prospects, or operations of Company. Employee further agrees that he will not criticize, demean, or disparage Company or any of the individuals or entities listed in Paragraph 3 of this Agreement.

13. **NON-SOLICITATION.**

    a. <u>Non-Solicitation of Employees and Consultants</u>. In order to protect the Company's protectable interests, including the stability of its workforce, Employee agrees that, for a period of three years after the Effective Date, Employee shall not, directly or indirectly, through any other person, firm, corporation or other entity (whether as an officer, director, employee, partner, contractor, consultant, holder of equity or debt investment in any privately-held entity, holder of equity or debt investment of more than 5% of any publicly-traded entity, lender, or in any other manner or capacity) solicit, induce, encourage or attempt to induce or encourage any employee or consultant of the Company to terminate his/her employment or consulting relationship with the Company, or to breach any other obligation to the Company and will not hire, or participate in any way in a third party hiring, any employee or consultant of the Company.

    <u>Non-Solicitation of Customers, Suppliers, etc.</u> Employee agrees that, for a period of three years after the Effective Date, Employee shall not, directly or indirectly, through any other person, firm, corporation or other entity (whether as an officer, director, employee, partner, contractor,  consultant, holder of equity or debt investment in any privately-held entity, holder of equity or debt investment of more than 5% of any publicly-traded entity, lender, or in any other manner or capacity) contact, solicit, or accept business from or conduct business with any of the Company's customers, suppliers, agents, wherever they are located, who had agreements with the Company or its affiliates during the calendar year in which the Termination Date occurs and any of the 36 months immediately preceding the current calendar year.

14. **NON-COMPETITION.** Employee agrees that, during the Restrictive Period (as defined below) Employee shall not:

    a. directly or indirectly, engage in, consult with, be employed by, be connected with and/or perform services for, in any capacity, any licensed cattle feeding facility with 1,000-head-or-greater (a "Competing Business") for a period of three years after the Termination Date within the United States of America, which the Employee acknowledges that the Company competes in the Cattle Feeding Industry and that competition runs throughout the United States of America, and that this geographic restriction is reasonable and appropriate;

9

      b.   own any interest in any Competing Business (other than ownership of less than one percent of the outstanding voting equity securities of a corporation or other entity if at the time of acquisition of ownership, such securities are listed on a national securities exchange or NASDAQ); or

      c.   directly or indirectly, assist others in forming or operating any Competing Business.

      d.   For the purposes of this section, "<u>Restrictive Period</u>" means the respective period as outlined in each section above, commencing on the Termination Date and ending on the thirty-six-month anniversary of the Termination Date.

15. **INJUNCTIVE RELIEF.** Employee acknowledges that Employee's breach of the Covenants contained in paragraphs 10–14 (collectively "Covenants") would cause irreparable injury to Company and agrees that in the event that Company learns of any such breach, in any form or manner, Company shall be entitled to seek temporary, preliminary, and permanent injunctive relief, including but not limited to immediately stopping payment of any amount not yet tendered under the terms of this Agreement, without the necessity of proving actual damages or posting any bond or other security.

16. **OPPORTUNITY TO REVIEW.** Employee agrees that he has had adequate opportunity to consider and review this Agreement and, if necessary, seek the advice of independent legal counsel. Employee has carefully read this Agreement, has no more questions about it, and understands the meaning and effect of this Agreement.

17. **ACKNOWLEDGMENT.** The undersigned Parties have had an opportunity to read and review this document. The undersigned Parties agree to the terms of this document and they are signing this document freely and voluntarily, without coercion or undue influence.

18. **NO ADMISSION OF LIABILITY.** Employee acknowledges that this Agreement is not an admission of liability or wrongdoing on the part of Company. Employee further acknowledges that Company denies any wrongdoing or liability.

19. **SEVERABILITY.** If any section of this Agreement is determined to be null and void, such portion shall be severable from the remaining sections of this Agreement.

20. **CONTROLLING LAW.** This Agreement shall be interpreted under the laws of the State of Kansas. The Parties hereby designate Scott County, Kansas to be the proper jurisdiction and venue for any suit or action arising out of this Agreement. This Agreement shall be binding upon and inure to the benefits of the executors, administrators, personal representatives, heirs, successors, and assigns of each.

21. **NON-WAIVER.** Failure by any Party hereto to enforce a provision at any time shall not be construed as a waiver of such provision, nor in any way affect the validity of this Agreement or any part hereof or the right of any party to enforce each and every provision. No waiver of any breach of this Agreement shall be held to constitute a waiver of any other breach.

22. **FINAL AND BINDING CONTRACT.** This Agreement constitutes the entire, final agreement between Parties and supersedes all prior agreements and understandings between them. The Parties have made no representation, agreement or promise to do or to not do anything other than the representations, agreements and promises stated herein. The Parties to this Agreement are not relying upon any communication, act, or omission, but rather are relying only on the specific statements in this Agreement. This Agreement can be changed only in writing (not orally). Any change must be signed by each of the Parties and must be labeled an amendment of this Agreement. Should any provision of this Agreement be declared or be determined by any court of competent jurisdiction to be wholly or partially illegal, invalid, or unenforceable, the legality, validity and enforceability of the remaining parts, terms or provisions shall not be affected thereby, and said illegal, unenforceable or invalid part, term or provision shall be deemed not to be a part of this Agreement.

11

23. **EFFECTIVE DATE.** This Agreement will become effective eight days after Employee signs the Agreement if Employee does not revoke the Agreement within the seven (7) calendar day period after signing it, and the Parties agree that Employee cannot sign this Agreement until after his employment with the Company ends ("Effective Date").

24. **MISCELLANEOUS.** This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. Executed faxed copies or PDF copies transmitted via email will be effective and enforceable

25. **HEADINGS.** The sections and headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**THIS SECTION INTENTIONALLY LEFT BLANK**

IN WITNESS WHEREOF, Employee has executed this Agreement and Company has caused this Agreement to be executed by its duly authorized representatives.

**COMPANY:**                              High Choice Entities

By: _____

Title: _____

Date: _____



**EMPLOYEE:**                             _____

Ty Rumford

Date: _____

ELECTRONICALLY FILED
2021 Jul 07 PM 5:18
CLERK OF THE SCOTT COUNTY DISTRICT COURT
CASE NUMBER:  2021-CV-000011

Tyrone L. Rumford

vs.

High Choice Feeders, LLC, et al. et. al.

**SUMMONS**

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

> **High Choice Cattle, LLC**
> **c/o Mitchell E. Wood**
> **Halbrook Wood Law**
> **3500 West 75th Street Suite 300**
> **Prairie Village, KS  66208**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Sean McGivern
> 218 N Mosley
> Wichita, KS 67202

within 21 days after service of summons on you.

*Sandra Acosta*

[SEAL]

Clerk of the District Court

Electronically signed  on 07/09/2021 11:18:43 AM

**Documents to be served with the Summons:**

Petition, Exhibit A, Exhibit B, Exhibit C

ELECTRONICALLY FILED
2021 Jul 07 PM 5:18
CLERK OF THE SCOTT COUNTY DISTRICT COURT
CASE NUMBER:  2021-CV-000011

Tyrone L. Rumford

vs.

High Choice Feeders, LLC, et al. et. al.

**SUMMONS**

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

> **High Choice Feeders, LLC**
> **c/o Mitchell E. Wood**
> **Halbrook Wood Law**
> **3500 West 75th Street Suite 300**
> **Prairie Village, KS  66208**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Sean McGivern
> 218 N Mosley
> Wichita, KS 67202

within 21 days after service of summons on you.

*Sandra Acosta*       (SEAL)

Clerk of the District Court

Electronically signed  on 07/09/2021 11:18:43 AM

**Documents to be served with the Summons:**

Petition, Exhibit A, Exhibit B, Exhibit C

ELECTRONICALLY FILED
2021 Jul 07 PM 5:18
CLERK OF THE SCOTT COUNTY DISTRICT COURT
CASE NUMBER:  2021-CV-000011

Tyrone L. Rumford

vs.

High Choice Feeders, LLC, et al. et. al.

**SUMMONS**

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

> **High Choice Grain, LLC**
> **c/o Mitchell E. Wood**
> **Halbrook Wood Law**
> **3500 West 75th Street Suite 300**
> **Prairie Village, KS  66208**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Sean McGivern
> 218 N Mosley
> Wichita, KS 67202

within 21 days after service of summons on you.

*Sandra Acosta*                 (SEAL)

Clerk of the District Court

Electronically signed  on 07/09/2021 11:18:43 AM

**Documents to be served with the Summons:**

Petition, Exhibit A, Exhibit B, Exhibit C

ELECTRONICALLY FILED
2021 Jul 07 PM 5:18
CLERK OF THE SCOTT COUNTY DISTRICT COURT
CASE NUMBER: 2021-CV-000011

Tyrone L. Rumford

vs.

High Choice Feeders, LLC, et al. et. al.

**SUMMONS**

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

        **Bradley J Scott**

        **c/o Mitchell E. Wood**

        **Halbrook Wood Law**

        **3500 West 75th Street Suite 300**

        **Prairie Village, KS  66208**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

        Sean McGivern

        218 N Mosley

        Wichita, KS 67202

within 21 days after service of summons on you.

*Sandra Acosta*

Clerk of the District Court

Electronically signed  on 07/09/2021 11:18:43 AM

**Documents to be served with the Summons:**

Petition, Exhibit A, Exhibit B, Exhibit C

ELECTRONICALLY FILED
2021 Jul 07 PM 5:18
CLERK OF THE SCOTT COUNTY DISTRICT COURT
CASE NUMBER:  2021-CV-000011

Tyrone L. Rumford

vs.

High Choice Feeders, LLC, et al. et. al.

**SUMMONS**

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

> **K. John Hintzsche**
>
> **c/o Mitchell E. Wood**
>
> **Halbrook Wood Law**
>
> **3500 West 75th Street Suite 300**
>
> **Prairie Village, KS  66208**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Sean McGivern
>
> 218 N Mosley
>
> Wichita, KS 67202

within 21 days after service of summons on you.

*Sandra Acosta*   (SEAL)

Clerk of the District Court

Electronically signed  on 07/09/2021 11:18:43 AM

**Documents to be served with the Summons:**

Petition, Exhibit A, Exhibit B, Exhibit C

ELECTRONICALLY FILED
2021 Jul 09 AM 9:32
CLERK OF THE SCOTT COUNTY DISTRICT COURT
CASE NUMBER:  2021-CV-000011

Tyrone L. Rumford

vs.

High Choice Feeders, LLC, et al. et. al.

**SUMMONS**

# Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

        **High Choice Feeders, LLC**

        **c/o Mitchell E. Wood**

        **Halbrook Wood Law**

        **3500 West 75th Street Suite 300**

        **Prairie Village, KS  66208**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

        Sean McGivern

        218 N Mosley

        Wichita, KS 67202

within 21 days after service of summons on you.

*Sandra Acosta*          (SEAL)

Clerk of the District Court

Electronically signed  on 07/09/2021 09:51:20 AM

**Documents to be served with the Summons:**

Petition, Exhibit A, Exhibit B, Exhibit C

ELECTRONICALLY FILED
2021 Jul 09 AM 9:32
CLERK OF THE SCOTT COUNTY DISTRICT COURT
CASE NUMBER:  2021-CV-000011

Tyrone L. Rumford

vs.

High Choice Feeders, LLC, et al. et. al.

**SUMMONS**

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

> **High Choice Cattle, LLC**
> **c/o Mitchell E. Wood**
> **Halbrook Wood Law**
> **3500 West 75th Street Suite 300**
> **Prairie Village, KS  66208**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Sean McGivern
> 218 N Mosley
> Wichita, KS 67202

within 21 days after service of summons on you.

*Sandra Acosta*

(SEAL)

Clerk of the District Court

Electronically signed  on 07/09/2021 09:51:20 AM

**Documents to be served with the Summons:**

Petition, Exhibit A, Exhibit B, Exhibit C

ELECTRONICALLY FILED
2021 Jul 09 AM 9:32
CLERK OF THE SCOTT COUNTY DISTRICT COURT
CASE NUMBER: 2021-CV-000011

Tyrone L. Rumford

vs.

High Choice Feeders, LLC, et al. et. al.

**SUMMONS**

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

> **High Choice Grain, LLC**
> **c/o Mitchell E. Wood**
> **Halbrook Wood Law**
> **3500 West 75th Street Suite 300**
> **Prairie Village, KS  66208**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Sean McGivern
> 218 N Mosley
> Wichita, KS 67202

within 21 days after service of summons on you.

*Sandra Acosta*

Clerk of the District Court

Electronically signed  on 07/09/2021 09:51:20 AM

**Documents to be served with the Summons:**

Petition, Exhibit A, Exhibit B, Exhibit C

<u>Tyrone L. Rumford</u>

vs.

<u>High Choice Feeders, LLC, et al. et. al.</u>

ELECTRONICALLY FILED
2021 Jul 09 AM 9:32
CLERK OF THE SCOTT COUNTY DISTRICT COURT
CASE NUMBER:  2021-CV-000011

**SUMMONS**

# Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

> **Bradley J Scott**
>
> **c/o Mitchell E. Wood**
>
> **Halbrook Wood Law**
>
> **3500 West 75th Street Suite 300**
>
> **Prairie Village, KS  66208**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Sean McGivern
>
> 218 N Mosley
>
> Wichita, KS 67202

within 21 days after service of summons on you.

Clerk of the District Court

Electronically signed  on 07/09/2021 09:51:20 AM

**Documents to be served with the Summons:**

Petition, Exhibit A, Exhibit B, Exhibit C

Tyrone L. Rumford

vs.

High Choice Feeders, LLC, et al. et. al.

ELECTRONICALLY FILED
2021 Jul 09 AM 9:32
CLERK OF THE SCOTT COUNTY DISTRICT COURT
CASE NUMBER:  2021-CV-000011

**SUMMONS**

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

**K. John Hintzsche**

**c/o Mitchell E. Wood**

**Halbrook Wood Law**

**3500 West 75th Street Suite 300**

**Prairie Village, KS  66208**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Sean McGivern

218 N Mosley

Wichita, KS 67202

within 21 days after service of summons on you.

Clerk of the District Court

Electronically signed  on 07/09/2021 09:51:20 AM

**Documents to be served with the Summons:**

Petition, Exhibit A, Exhibit B, Exhibit C

ELECTRONICALLY FILED
2021 Jul 12 AM 10:31
CLERK OF THE SCOTT COUNTY DISTRICT COURT
CASE NUMBER:  2021-CV-000011

## IN THE TWENTY FIFTH JUDICIAL DISTRICT
## DISTRICT COURT, SCOTT COUNTY, KANSAS
## CIVIL DEPARTMENT

|  |  |  |
|---|---|---|
| TYRONE RUMFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2021-cv-000011 |
| | ) | |
| HIGH CHOICE FEEDERS, LLC, | ) | |
| HIGH CHOICE CATTLE, LLC, | ) | |
| HIGH CHOICE GRAIN, LLC | ) | |
| BRADLEY J. SCOTT, and | ) | |
| K. JOHN HINTZSCHE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pursuant to K.S.A. Chapter 60

## RETURN OF SERVICE

| | |
|---|---|
| STATE OF KANSAS | ) |
| | ) ss: |
| COUNTY OF SEDGWICK | ) |

Sean M. McGivern, being first duly sworn upon oath, states as follows:

I hereby certify that on July 9, 2021,  I served, the Defendants High Choice Feeders, LLC, High Choice Cattle LLC, High Choice Grain, LLC,  Bradley J. Scott, and K. John Hintzsche,  the within Summons and Petition, and Exhibits as an attachment by electronic email to their authorized agent, attorney Mitchell E. Wood , who accepted service on their behalf as shown in the electronic mail notification attached within as Exhibit A.

DATED: July 12, 2021.

RESPECTFULLY SUBMITTED BY:

GRAYBILL & HAZLEWOOD, LLC

/s/ Sean McGivern
Sean M. McGivern, #22932
218 N. Mosley
Wichita, KS 67202
Telephone: (316) 266-4058
Facsimile: (316) 462-5566
sean@graybillhazlewood.coms/

ATTACHMENT A

| | |
|---|---|
| **From:** | Sean McGivern |
| **To:** | Queela McGlory; Nathan Elliott; Julie Rumford |
| **Subject:** | FW: Ty Rumford / HCF |
| **Date:** | Saturday, July 10, 2021 7:59:33 AM |

---

**From:** Mitch E. Wood <MWood@HalbrookWoodLaw.com>
**Sent:** Saturday, July 10, 2021 7:16 AM
**To:** Sean McGivern <sean@graybillhazlewood.com>
**Cc:** Ashlee N. Yager <AYager@HalbrookWoodLaw.com>; Ezra Begemann
<EBegemann@HalbrookWoodLaw.com>
**Subject:** RE: Ty Rumford / HCF

Thank Sean, confirmed.

Mitchell E. Wood



3500 West 75th Street, Suite 300
Prairie Village, Kansas 66208
Telephone:    913-529-1188
Direct:         913-529-1164
Facsimile:     913-529-1199
Mobile:        816-812-7749
Email: MWood@HalbrookWoodLaw.com
Website: www.halbrookwoodlaw.com
_____

DISCLAIMER: This email, and any attachments thereto, is intended only for use by addressees
named herein and contains legally privileged or confidential information. If you are not the intended
recipient of this email, you are hereby notified that any dissemination, distribution or copying of this
email, and any attachments thereto, is strictly prohibited. If you have received this email in error,
please immediately notify me by telephone and permanently delete the original and any copy of this
email and any printout thereof.

---

**From:** Sean McGivern <sean@graybillhazlewood.com>
**Sent:** Friday, July 9, 2021 1:28 PM
**To:** Mitch E. Wood <MWood@HalbrookWoodLaw.com>
**Cc:** Ashlee N. Yager <AYager@HalbrookWoodLaw.com>; Ezra Begemann
<EBegemann@HalbrookWoodLaw.com>
**Subject:** RE: Ty Rumford / HCF

ATTACHMENT A

Hello Mitch,

The summonses for each defendant are attached.

*Can you confirm that you have accepted service of process as of 7/9/2021?*

Thank you,

Sean
_____
Sean McGivern
GRAYBILL & HAZLEWOOD, LLC
218 N. Mosley St.
Wichita, KS 67202
(316) 266-4058 (office)
(316) 266-5020 (direct)
(316) 669-9328 (private fax)
(316) 462-5566 (firm fax)
sean@graybillhazlewood.com

ELECTRONICALLY FILED
2021 Jul 30 AM 9:41
CLERK OF THE SCOTT COUNTY DISTRICT COURT
CASE NUMBER: 2021-CV-000011

**IN THE TWENTY FIFTH JUDICIAL DISTRICT**
**DISTRICT COURT OF SCOTT COUNTY, KANSAS**
**CIVIL COURT DEPARTMENT**

| | | |
|---|---|---|
| **TYRONE L. RUMFORD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **HIGH CHOICE FEEDERS, LLC,** | ) | **Case No.: 2021-CV-000011** |
| **HIGH CHOICE CATTLE, LLC,** | ) | |
| **HIGH CHOICE GRAIN, LLC,** | ) | |
| **BRADLEY J. SCOTT, and** | ) | |
| **K. JOHN HINTZSCHE.** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**REQUEST FOR CLERK'S EXTENSION OF TIME**</u>

Pursuant to Kansas Supreme Court Rule 113 Defendants High Choice Feeders, LLC; High Choice Cattle, LLC; High Choice Grain, LLC; Bradley J. Scott; and K. John Hintzsche ("Defendants"), request the Clerk of the Court to extend for fourteen (14) days the time within which Defendants may file an answer of otherwise plead in response to Plaintiff's Petition in this action. In support of this request, Defendant states as follows:

1. Plaintiff Tyrone L. Rumford ("Plaintiff") filed his Petition Pursuant to K.S.A. Chapter 60 ("Petition") on July 7, 2021;
2. Defendants accepted service of the Petition on July 9, 2021;
3. Defendant's responsive pleadings to Plaintiff's Petition are currently due on or before July 30, 2021;
4. Pursuant to Kansas Supreme Court Rule 113, Defendant requests an extension of time of fourteen (14) days up to and including August 13, 2021, to file its responsive pleading(s) to the Petition;
5. This is Defendant's first request for an extension of time with respect to this deadline;
6. Defendant's time to file a responsive pleading to the Petition has not expired as of the date of this Motion; and
7. This request is being made in good faith and not for the purpose of hindering or delaying these proceedings.

Wherefore, for the above and foregoing reasons, and pursuant to Kansas Supreme Court Rule 113, Defendants hereby request the Clerk of the Court to extend for fourteen (14) days the time within which Defendant may file an answer of otherwise plead in response to Plaintiff's Petition, up to and including August 13, 2021, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Mitchell E. Wood*
Mitchell E. Wood       (KS #24052)
Ashlee N. Yager       (KS #26456)
HALBROOK WOOD, PC
3500 West 75th Street, Suite 300
Prairie Village, Kansas 66208
TEL: (913) 529-1188
FAX: (913) 529-1199
EMAIL: mwood@halbrookwoodlaw.com
EMAIL: ayager@halbrookwoodlaw.com

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 30th day of July, 2021, a copy of the foregoing was electronically filed with the Clerk of the Court, and served as follows, via email, to:

Sean McGivern
Nathan R. Elliott
GRAYBILL & HAZLEWOOD, LLC
218 N. Mosley
Wichita, KS  67202
TEL: (316) 266-4058
FAX: (316) 462-5566
Email:  sean@graybillhazlewood.com
Email:  nathan@graybillhazlewood.com

ATTORNEYS FOR PLAINTIFF

/s/ *Mitchell E. Wood*
Attorney for Defendant

2

ELECTRONICALLY FILED
2021 Jul 30 AM 10:16
CLERK OF THE SCOTT COUNTY DISTRICT COURT
CASE NUMBER: 2021-CV-000011



**Court:**        Scott County District Court

**Case Number:**  2021-CV-000011

**Case Title:**   Tyrone L. Rumford vs. High Choice Feeders, LLC, et al.

**Type:**         Proposed Clerk's Order Granting Extension Of Time To Answer Or Otherwise Plead

SO ORDERED.

/s/ Deena Sharpe, Deputy Clerk

Electronically signed on 2021-07-30 10:15:50    page 1 of 2

**IN THE TWENTY FIFTH JUDICIAL DISTRICT**
**DISTRICT COURT OF SCOTT COUNTY, KANSAS**
**CIVIL COURT DEPARTMENT**

| | |
|---|---|
| **TYRONE L. RUMFORD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **HIGH CHOICE FEEDERS, LLC,** ) | **Case No.:  2021-CV-000011** |
| **HIGH CHOICE CATTLE, LLC,** ) | |
| **HIGH CHOICE GRAIN, LLC,** ) | |
| **BRADLEY J. SCOTT, and** ) | |
| **K. JOHN HINTZSCHE.** ) | |
| ) | |
| **Defendants.** ) | |

## CLERK'S ORDER GRANTING EXTENSION
## OF TIME TO ANSWER OR OTHERWISE PLEAD

Pursuant to Kansas Supreme Court Rule 113 Defendants High Choice Feeders, LLC; High Choice Cattle, LLC; High Choice Grain, LLC; Bradley J. Scott; and K. John Hintzsche ("Defendants"); whose responsive pleadings are currently due on or before July 30, 2021 requests an additional fourteen (14) days, up to and including August 13, 2021, to Answer or otherwise respond to Plaintiff's Petition. The time originally prescribed to Answer or otherwise respond to Plaintiff's Petition has not yet expired.

Wherefore, Defendants are hereby granted an additional (14) days, up to and including August 13, 2021, in which to Answer or otherwise respond to Plaintiff's Petition.

Date:_____        _____
                            CLERK OF THE DISTRICT COURT

ELECTRONICALLY FILED
2021 Jul 30 AM 9:41
CLERK OF THE SCOTT COUNTY DISTRICT COURT
CASE NUMBER:  2021-CV-000011

**IN THE TWENTY FIFTH JUDICIAL DISTRICT**
**DISTRICT COURT OF SCOTT COUNTY, KANSAS**
**CIVIL COURT DEPARTMENT**

| | |
|---|---|
| **TYRONE L. RUMFORD,** )<br>)<br>      **Plaintiff,** )<br>)<br>**v.** )<br>)<br>**HIGH CHOICE FEEDERS, LLC,** )<br>**HIGH CHOICE CATTLE, LLC,** )<br>**HIGH CHOICE GRAIN, LLC,** )<br>**BRADLEY J. SCOTT, and** )<br>**K. JOHN HINTZSCHE.** )<br>)<br>      **Defendants.** ) | **Case No.:  2021-CV-000011** |

<u>**ENTRY OF APPEARANCE AND DESIGNATION OF LEAD COUNSEL**</u>

COMES NOW Mitchell E. Wood of Halbrook Wood, P.C. hereby enters his appearance

as lead counsel of record for Defendant High Choice Feeders, LLC., High Choice Cattle, LLC.,

High Choice Grain, LLC., Bradley J. Scott and K. John Hintzsche.

Respectfully submitted,

/s/ *Mitchell E. Wood*
Mitchell E. Wood      (KS #24052)
Ashlee N. Yager      (KS #26456)
HALBROOK WOOD, PC
3500 West 75th Street, Suite 300
Prairie Village, Kansas 66208
TEL: (913) 529-1188
FAX: (913) 529-1199
EMAIL: mwood@halbrookwoodlaw.com
EMAIL: ayager@halbrookwoodlaw.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 30th day of July, 2021, the foregoing was electronically filed with the Clerk of the Court and served via the Court's e-filing system and via electronic mail to the following counsel of record:

Sean McGivern
Nathan R. Elliott
GRAYBILL & HAZLEWOOD, LLC
218 N. Mosley
Wichita, KS  67202
TEL: (316) 266-4058
FAX: (316) 462-5566
Email:  sean@graybillhazlewood.com
Email:  nathan@graybillhazlewood.com

ATTORNEYS FOR PLAINTIFF

/s/ *Mitchell E. Wood*
ATTORNEY FOR DEFENDANT

ELECTRONICALLY FILED
2021 Jul 30 AM 9:43
CLERK OF THE SCOTT COUNTY DISTRICT COURT
CASE NUMBER:  2021-CV-000011

## IN THE TWENTY FIFTH JUDICIAL DISTRICT
## DISTRICT COURT OF SCOTT COUNTY, KANSAS
## CIVIL COURT DEPARTMENT

| | |
|---|---|
| **TYRONE L. RUMFORD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **HIGH CHOICE FEEDERS, LLC,** | )   **Case No.:  2021-CV-000011** |
| **HIGH CHOICE CATTLE, LLC,** | ) |
| **HIGH CHOICE GRAIN, LLC,** | ) |
| **BRADLEY J. SCOTT, and** | ) |
| **K. JOHN HINTZSCHE.** | ) |
| | ) |
| **Defendants.** | ) |

## ENTRY OF APPEARANCE

COMES NOW Ashlee N. Yager of Halbrook Wood, P.C. hereby enters her appearance as counsel of record for Defendant High Choice Feeders, LLC., High Choice Cattle, LLC., High Choice Grain, LLC., Bradley J. Scott and K. John Hintzsche.

Respectfully submitted,

/s/ *Ashlee N. Yager*

Mitchell E. Wood       (KS #24052)
Ashlee N. Yager       (KS #26456)
HALBROOK WOOD, PC
3500 West 75th Street, Suite 300
Prairie Village, Kansas 66208
TEL: (913) 529-1188
FAX: (913) 529-1199
EMAIL: mwood@halbrookwoodlaw.com
EMAIL: ayager@halbrookwoodlaw.com

ATTORNEYS FOR DEFENDANT

1

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 30th day of July, 2021, the foregoing was electronically filed with the Clerk of the Court and served via the Court's e-filing system and via electronic mail to the following counsel of record:

Sean McGivern
Nathan R. Elliott
GRAYBILL & HAZLEWOOD, LLC
218 N. Mosley
Wichita, KS  67202
TEL: (316) 266-4058
FAX: (316) 462-5566
Email:  sean@graybillhazlewood.com
Email:  nathan@graybillhazlewood.com

ATTORNEYS FOR PLAINTIFF

/s/ *Ashlee N. Yager*
ATTORNEY FOR DEFENDANT